CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney[1]

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-cr-00109-WHO |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Sentencing Date: July 17, 2025 |
| JUBA KENYON, | Sentencing Time: 1:30 p.m. |
| Defendant. | |

## I.    INTRODUCTION

Defendant Juba Kenyon was indicted on two counts of possession with intent to distribute a controlled substance (*i.e.*, fentanyl and methamphetamine, respectively) in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts One and Two) and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three). Pursuant to a plea agreement, Kenyon pled guilty to Counts One and Two, the drug offenses. Under the terms of the plea agreement, if Kenyon successfully completes the Convictions Alternative Program (CAP), the United States will recommend a time-served sentence and move for dismissal of Count Three, the firearm offense. Given Kenyon's successful

---

[1] Certified Law Clerk Thomas Harless assisted in drafting this sentencing memorandum.

United States' Sentencing Memorandum      1
3:23-cr-00109-WHO

completion of CAP and his outstanding rehabilitative achievements, the government respectfully recommends that he be sentenced to time-served followed by two years on supervised release. As further set forth in the plea agreement, Kenyon should also be ordered to forfeit various items seized during the underlying incident, including the firearm, ammunition, and $1,735 cash. Finally, during the sentencing hearing, the government will move to dismiss Count Three, the firearm offense, in accordance with the plea agreement.

## II. BACKGROUND

### A. Circumstances of the Offenses[2]

Following a vehicle stop of the Nissan that Kenyon was driving on December 31, 2022, Fort Bragg Police Department officers arrested Kenyon for driving under the influence of drugs. They seized from Kenyon (incident to arrest) and/or the Nissan (pursuant to a search warrant) about 165 gross grams of fentanyl and 268 gross grams of methamphetamine, a Glock 9MM handgun, 57 rounds of ammunition, $1,735 cash, two cell phones, a digital scale and 300 plastic bags, and other contraband. Kenyon was the driver and sole occupant of the Nissan.

### B. Procedural History

In a three-count Indictment, dated April 12, 2023, Kenyon was charged with two counts of possession with intent to distribute a controlled substance (*i.e.*, fentanyl and methamphetamine, respectively) in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(C) (Counts One and Two) and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three). The Indictment contains forfeiture allegations regarding the proceeds from or instrumentalities used to facilitate the drug offenses and the firearm and ammunition. On June 14, 2024, pursuant to a plea agreement, Kenyon pled guilty to Counts One and Two, the drug offenses, in the Indictment.

### C. Sentencing Guidelines Calculation

In accordance with the parties' plea agreement, U.S. Probation has issued the following advisory Guidelines calculation.

    a.    Base Offense Level, U.S.S.G. §2D1.1(c)(5):    28
        (at least 700 KG but less than 1,000 KG of converted drug weight)

---

[2] The factual assertions in this brief are based on the confidential Presentence Investigation Report, the plea agreement, and the incident reports in this case.

United States' Sentencing Memorandum     2
3:23-cr-00109-WHO

|   |   |   |   |
|---|---|---|---|
| | b. | Specific offense characteristics under U.S.S.G. section 2D1.1(b)(1) (possessed a dangerous weapon) | +2 |
| | c. | Acceptance of Responsibility:<br>If defendant meets the requirement of U.S.S.G section 3E1.1., he may be entitled to a three-level reduction for acceptance of responsibility, provided guilt is admitted, he cooperates with Court and the Probation office in any presentence investigation ordered by the Court, and continued manifestation of acceptance of responsibility through and including the time of sentencing. | -3 |
| | d. | Adjusted Offense Level: | 27 |

U.S. Probation also determined that Kenyon has five criminal history points (Criminal History Category III) and is subject to a Guidelines sentencing range of 87 to 108 months. U.S. Probation recommends that Kenyon be sentenced to time-served (a downward variance) followed by 3 years on supervised release (concurrent).

## III. DISCUSSION

### A. Legal Standards

The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) The nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.  Sentencing Recommendation by the United States**

Given his successful completion of CAP and exemplary rehabilitative achievements, the United States respectfully recommends that the Court sentence Kenyon to time-served followed by two years on supervised release. In accordance with the plea agreement, the Court should also order Kenyon to forfeit various items seized during the incident, including the firearm, ammunition, $1,735 cash, two cell phones, and a digital scale.

Regarding the nature and circumstances of the offenses, Kenyon possessed with intent to distribute approximately 165 gross grams of fentanyl and 268 gross grams of methamphetamine, along with a firearm and ammunition, among other contraband. By selling lethal drugs, such as fentanyl, Kenyon endangered people's lives and detrimentally impacted the users of those drugs, their families, and the wider community. The incident in this case was also not Kenyon's first brush with the law, as he has prior felonies. He was convicted of second-degree burglary in 1997, transporting controlled substances in 2005, grand theft in 2013, and possessing controlled substances for sale in 2013.

Nevertheless, Kenyon has no prior convictions involving violence and his most recent prior convictions for theft and drugs in 2013 (before this case) was over 10 years ago. After his arrest for this case, Kenyon also turned a new leaf as demonstrated his outstanding rehabilitative progress. As Kenyon explained: "[t]his case saved me." PSR at 6. During his upbringing, Kenyon experienced poverty and was exposed to drugs and alcohol at a young age. As an adult, he suffered from bouts of substance abuse addiction at different points in his life. It appears that his substance addiction was, in fact, a causative factor in his prior crimes and in the instant offenses.

Notably, however, there were times when Kenyon was gainfully employed. For example, he worked as a forklift operator and product inspector at an Amazon warehouse from 2015 through 2021. Sometime in 2021, Kenyon left his job at Amazon and was self-employed doing landscaping and yard maintenance. But around that same time, Kenyon's mother, with whom he was close, died suddenly

and he felt a void.  To deal with his emotional and mental struggles, Kenyon again turned to drugs and began to sell drugs to feed his own addiction, leading to his arrest in this case.

However, since his initial appearance in this case on April 20, 2023, Kenyon has remained sober and exhibited a deep commitment to turning his life around.  While on pretrial release, Kenyon completed a 90-day residential treatment program at New Bridge on July 31, 2023.  He remained at the New Bridge facility, participating in groups and treatment while job searching, until September 12, 2023, when he moved into New Bridge's Satellite Housing and Sober Living Environment.  While in this half-way house setting, Kenyon continued to participate in weekly rehabilitation programs, such as New Bridge's aftercare meetings, at least two AA/NA meetings, and mental health therapy.  Since November 12, 2023, Kenyon has been employed full-time at a Chevron gas station in Berkeley.  Thus, while on pretrial release, Kenyon demonstrated a commitment to sobriety, to maintaining gainful employment, and to respecting the law and this Court's pretrial release orders.

Kenyon then turned his attention to resolving this criminal case.  He took responsibility for his actions by pleading guilty to Counts One and Two, the drug offenses, in the Indictment and entering into a CAP plea agreement with a promise of continuing his rehabilitative gains in exchange for a time-served offer and dismissal of Count Three, the firearm offense.

Kenyon faithfully upheld his part of the bargain.  While in CAP, Kenyon not only succeeded in further changing his life for the better, but he has also helped others do the same by mentoring people who also struggled with substance addiction.  Indeed, Kenyon has been present at and has participated in all CAP meetings.  Throughout the CAP, he has participated in weekly drug testing, Courage to Change, and at least two self-help group meetings, as well as bi-weekly individual counseling.  Kenyon also remained employed full-time at Chevron, and was promoted to manager role at that job showing that he can be trusted to lead others and help operate a business.  This is no small feat.  As noted, Kenyon now mentors others, spending at least one hour on most days supporting other CAP residents.  Kenyon realizes that he "can help people and counteract those negative effects" of his prior misconduct.  PSR at 6.  He recognizes that he is "trustworthy now" and that he is someone other people can depend on. *Id*.  Thus, Kenyon realizes that he can make a positive contribution to society and that those contributions

matter. Further, for over two years now since his initial appearance in this criminal case, Kenyon has remained sober, and he remains committed to his sobriety.

Accordingly, given Kenyon's successful completion of CAP program and remarkable rehabilitative achievements, a time-served sentence is appropriate.

## CONCLUSION

The United States respectfully requests that the Court sentence Kenyon to time-served followed by two years on supervised release and order him to forfeit the items, including the firearm, ammunition, and $1,735, listed in the parties' plea agreement.

DATED: July 10, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney